IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RACETRAC PETROLEUM, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action File No. |
| ) | _____ |
| INMOMENT, INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, RaceTrac Petroleum, Inc. ("RaceTrac"), files this Petition for Declaratory Judgment to determine the rights and obligations of the parties, alleging and showing as follows:

**INTRODUCTION**

1. This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 to determine and resolve questions of actual controversy involving the rights and obligations of the parties pursuant to a Service Agreement and certain Amendments to the Service Agreement between RaceTrac and defendant InMoment, Inc., formerly known as Mindshare Technologies, Inc. ("InMoment").

2. RaceTrac seeks a declaration that it properly terminated the Service Agreement effective July 3, 2018, and that as of that date, neither party has any

further duties or obligations under the Service Agreement or any of its Amendments.

## THE PARTIES

3. Plaintiff RaceTrac is a Georgia Corporation with its principal place of business in Atlanta, Georgia.

4. Upon information and belief, defendant InMoment is a Utah Corporation with its principal place of business in the State of Utah. Upon information and belief, prior to May 2014, InMoment was known as Mindshare Technologies, Inc., and its name was legally changed to InMoment, Inc. in or around May 2014.

5. On or about March 1, 2012 RaceTrac and InMoment entered into a Service Agreement which provided for certain services to be provided to RaceTrac by InMoment (then known as Mindshare Technologies, Inc.) (the "Service Agreement.") As set forth in further detail below, beginning in March 2014, the parties subsequently entered into a series of four Amendments to the Service Agreement. RaceTrac terminated the Service Agreement as of July 3, 2018.

## JURISDICTION AND VENUE

6. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties, and the

matter in controversy, exclusive of interest, attorneys' fees, and costs, exceeds Seventy-Five Thousand Dollars ($75,000). The Court further has jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, because RaceTrac is seeking a declaration regarding the parties' rights and obligations with respect to the rights and obligations of the parties pursuant to the Service Agreement and its Amendments.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the services provided to RaceTrac under the Service Agreement were performed in this District.

8. Upon information and belief, InMoment may be served at its registered agent, Jesse Aldous, 10355 S. Jordan Gateway, #600, South Jordan, Utah 84905. The Court has personal jurisdiction over In Moment because it transacts business in the State of Georgia.

**<u>Factual Statement</u>**

9. On or about March 1, 2012, RaceTrac and InMoment (then known as Mindshare Technologies, Inc.) entered into a Service Agreement to provide certain customer and employee feedback phone and web-based survey, analysis and reporting services to RaceTrac, pursuant to the terms and conditions in the

Agreement.  A true and correct copy of the Agreement is attached hereto as Exhibit "A."

10. Under the terms of the Service Agreement, InMoment agreed to provide services to between 600-100 locations, for an initial term of twenty-four (24) months, at Thirty-Two dollars ($32.00) per location.

11. In exchange for the services provided to RaceTrac set forth in the Service Agreement, RaceTrac agreed to pay InMoment a monthly fee of Sixteen Thousand, One Hundred Sixteen dollars ($16,116) per month, plus incidental fees for use of add-on services.

12. The Service Agreement was for an initial term of Twenty-Four (24) months from the Effective Date of March 1, 2012.  (Section 1 of the Service Agreement).  Section 1 further provides:

> **After the initial expiration of the 12-months from "Effective Date," Client may cancel the agreement at any time for any reason or no reason without penalty by providing a 30-day written notice to Mindshare.  This Agreement will be automatically renewed for successive 12 month periods upon written agreement of both parties. Mindshare agrees that prices will not increase.**

(Emphasis in original)

13. Accordingly, pursuant to Section 1 of the Service Agreement, after the initial expiration of 12-months from the Effective Date, RaceTrac had a unilateral

right to cancel the Agreement, without penalty, with thirty (30) days' written notice.

14. This unilateral right to cancel the Agreement without penalty was reiterated in Exhibit A to the Service Agreement, which provides that the that the "30-day cancellation clause can be exercised after initial 12-months without any penalty." Section 14 of the Service Agreement states that its attached Exhibits are "expressly made a part of this Agreement as though completely set forth in it" and that "all references to this Agreement shall be deemed to refer to and include this Agreement and all such Exhibits."

15. On or about March 1, 2014, the parties entered into Amendment 1 of the Service Agreement. ("Amendment 1")(attached hereto as Exhibit "B"). Amendment 1 provides, in part:

1. **Term**

The Agreement is renewed for an additional 12-month term beginning on March 1, 2014 and ending on February 28, 2015.

16. Amendment 1 further specifically deleted and replaced certain names and departments, clarified the scope of the Employee Engagement Offering in the Service Agreement, and specifically deleted and replaced the Travel Policy. Amendment 1 further provides: "Unless specifically modified by this Amendment, all other provisions of the Agreement remain in full force and effect." Amendment

1 does not amend or otherwise address RaceTrac's unilateral termination right in Section 1 and in Exhibit A of the Service Agreement.

      17.    On or about September 8, 2014, the parties entered into Addendum 2 to the Services Agreement ("Addendum 2")(attached hereto as Exhibit "C"). Addendum 2, in part, changed Mindshare's name to InMoment, and extended certain services offered under the Agreement.  Addendum 2 further provides: "Except as specifically amended of modified by Addendum 2, all terms and conditions of the Agreement remain in full force and effect."  Addendum 2 does not amend or otherwise address RaceTrac's unilateral termination right in Section 1 and in Exhibit A of the Service Agreement.

      18.    On or about February 27, 2015, the parties entered into Amendment 3 to the Service Agreement.  ("Amendment 3")(attached hereto as Exhibit "D"). Amendment 3 provides:

> Client and InMoment modify the Agreement as outlined below.
>
> 1. Term
>
>    The Agreement is renewed for an additional 12-month term beginning on March 1, 2015 and ending on February 29, 2016.  Upon expiration, the Agreement will automatically renew for additional 12-month terms unless either party provides the other party with at least 30-day prior written notice of its intent not to renew.

19. Amendment 3 further provides: "Unless specifically modified by this Amendment, all other provisions of the Agreement remain in full force and effect." Amendment 3 does not specifically delete and replace any terms of the Agreement and does not amend or otherwise address RaceTrac's unilateral termination right in Section 1 and in Exhibit A of the Service Agreement.

20. On or about June 29, 2017, the parties entered into Amendment 4 of the Service Agreement. ("Amendment 4")(attached hereto as Exhibit "E"). Amendment 4 added a one-time addition to questions and report on the "Made to Order" Menu Item. Amendment 4 further provides: "Unless specifically modified by this Amendment, all other provisions of the Agreement remain in full force and effect." Amendment 4 does not amend or otherwise address RaceTrac's unilateral termination right in Section 1 and in Exhibit A of the Service Agreement.

21. On or about May 18, 2018, pursuant to Section 1 and Exhibit A of the Service Agreement, RaceTrac provided written notice to InMoment of its intent to terminate the Service Agreement, effective July 3, 2018. A true and correct copy of RaceTrac's written notice of termination of the Service Agreement is attached hereto as Exhibit "F."

22. On or about May 24, 2018, InMoment notified RaceTrac via email that its position was that Amendment 3 "supersedes" Section 1 of the Master

7

Service Agreement, and the agreement was therefore "in force until February 28, 2019." InMoment made no mention of Exhibit A to the Service Agreement. (attached hereto as Exhibit "G").

23. As set forth above, RaceTrac's unilateral right of termination is set forth in both Section 1 of the Service Agreement and in Exhibit A to the Service Agreement. None of the Amendments to the Service Agreement – including Amendment 3 – delete or replace RaceTrac's unilateral right of termination in Section 1 of the Service Agreement.

24. Additionally, none of the Amendments address or relate in any way to Exhibit A, which, in addition to Section 1, also sets forth RaceTrac's unilateral right of termination. All four Amendments to the Service Agreement state that unless specifically modified, all other provisions of the Agreement (which expressly include its Exhibits) remain in full force and effect. Therefore, Exhibit A remains in full force and effect. Exhibit A is further referenced in both Sections 2 and 5 of the Service Agreement, which have never been amended by the parties.

## COUNT I

## DECLARATORY JUDGMENT

25. RaceTrac restates and re-alleges Paragraphs 1 through 24 as though fully set forth herein.

26. Section 1 of the Service Agreement provides, in part, that after the expiration of the initial 12-months from the Effective Date of the agreement, RaceTrac "may cancel the agreement at any time for any reason or no reason without penalty by providing a 30-day written notice to Mindshare." Exhibit A of the Service Agreement further provides that the "30-day cancellation clause can be exercised after initial 12-months without penalty."

27. Amendment 3 to the Service Agreement specifies a new one-year term for the Agreement, with an automatic renewal provision. Amendment 3 does not amend or otherwise address RaceTrac's unilateral termination right in Section 1 of the Service Agreement. Amendment 3 also does not address or amend Exhibit A to the Service Agreement in any manner.

28. On May 18, 2018, pursuant to Section 1 and Exhibit A of the Service Agreement, RaceTrac notified InMoment of its intent to terminate the Service Agreement, effective July 3, 2018. Accordingly, RaceTrac properly provided thirty (30) days' written notice to InMoment of its intent to terminate the agreement.

29. Neither party has any further obligations under the Service Agreement or any of its Amendments, other than those which expressly survived termination of the Agreement. More specifically, after July 3, 2018, RaceTrac had no

9

obligation to accept services from InMoment or to pay any billings from InMoment.

30. RaceTrac is informed and believes that InMoment nonetheless contends that the Service Agreement remains in effect, and that RaceTrac is obligated to pay InMoment the monthly fee of $16,116, plus incidental fees, through February 28, 2019.  More specifically, RaceTrac is informed and believes that InMoment contends that Amendment 3 supersedes Section 1 in its entirety, and therefore RaceTrac did not have a unilateral right to terminate the Service Agreement with thirty (30) days' notice.  InMoment therefore contends that RaceTrac is in breach of its obligation to pay the services fees through February 28, 2019.  RaceTrac denies InMoment's contentions.

31. As such, an actual and present dispute exists between RaceTrac and InMoment as to whether the Service Agreement remains in effect, and whether the parties have continued obligations under the Service Agreement through February 28, 2019.

32. Inasmuch as an actual and present controversy currently exists between RaceTrac and InMoment concerning their respective rights and obligations under the Service Agreement and its Amendments, RaceTrac is entitled

to a judicial determination of its rights and obligations pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

WHEREFORE, RaceTrac respectfully requests that this Court enter an Order:

1. Declaring that RaceTrac Petroleum, Inc. has no further obligations under the Service Agreement or any of its Amendments, and specifically has no obligation to accept any services from InMoment or pay any further billings from InMoment;

2. Allowing a trial by jury on any material issues of fact;

3. Awarding all reasonable costs incurred by RaceTrac in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

4. For such other and further relief as this Court deems just and proper.

Dated:  November 7, 2018.

                                       WEINBERG, WHEELER, HUDGINS,
                                       GUNN & DIAL, LLC

                                       */s/  David I. Matthews*
                                       David I. Matthews
                                       Georgia Bar No. 477510
                                       Jennifer A. Adler
                                       Georgia Bar No. 585635

3344 Peachtree Road NE, Suite 2400
Atlanta, Georgia 30326
404-876-2700 – telephone
404-875-9433 – facsimile
dmatthews@wwhgd.com
jadler@wwhgd.com